Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
UNITED STATES of America
v.
James LENEGAN, also known as "Boo", John
Malloy, also known as "Tow Pro", Defendants.

Criminal Action No. 07-CR-689.
June 4, 2009.

Daniel A. Velez, Assistant United States Attorney,
Joseph T. Labrum, III, Esquires, Assistant United
States Attorney, for the United States of America.

Gavin P. Holihan, Esquire, for Defendant James
Lenegan.

Trevan P. Borum, Esquire, for Defendant John
Malloy.

ORDER
JAMES KNOLL GARDNER, District Judge.
*1 NOW, this 4th day of June, 2009, upon
consideration of the following documents:

(1) Motion for Judgment of Acquittal Pursuant to
Federal Rule of Criminal Procedure 29(c), which
motion was filed January 16, 2009 by defendant
James Lenegan;

(2) Motion for Joinder in Co-Defendant's Motion
for Judgment of Acquittal Pursuant to Federal Rule
of Criminal Procedure 29(c), which motion was
filed January 16, 2009 by defendant John Malloy;

(3) Government's Opposition to Defendants'
Motion for Judgment of Acquittal Pursuant to
Federal Rule of Criminal Procedure 29(c), which
opposition was filed January 26, 2009;

and for the reasons expressed in the
accompanying Opinion,

IT IS ORDERED that the Motion for Joinder in
Co-Defendant's Motion for Judgment of Acquittal
Pursuant to Federal Rule of Criminal Procedure 29(c)

is granted.[FN1]

FN1. The motion for joinder is granted
insofar as I will consider motion for
judgment of acquittal as having been filed
on behalf of both defendants, but my
granting of the motion for joinder does not
constitute a determination on the merits of
defendant Malloy's request for Rule 29(c)
relief.

IT IS FURTHER ORDERED that the Motion for
Judgment of Acquittal Pursuant to Federal Rule of
Criminal Procedure 29(c) is denied as to both
defendants James Lenegan and John Malloy.

OPINION
This matter is before the court on the Motion for
Judgment of Acquittal Pursuant to Federal Rule of
Criminal Procedure 29(c), which motion was filed
January 16, 2009 by defendant James Lenegan. Also
on January 16, 2009, defendant John Malloy filed a
Motion for Joinder in Co-Defendant's Motion for
Judgment of Acquittal Pursuant to Federal Rule of
Criminal Procedure 29(c). The Government's
Opposition to Defendants' Motion for Judgment of
Acquittal Pursuant to Federal Rule of Criminal
Procedure 29(c) was filed January 26, 2009. For the
following reasons, I deny both defendants' motion for
judgment of acquittal.

PROCEDURAL HISTORY
On November 7, 2007, defendants James
Lenegan and John Malloy were charged in a 41-count
Indictment together with co-defendants **CW1**,[*]
**CW2, CW3**, William Hudicek, Donald Homan,
Jessey Colon, John James, Jr., Robert Dunphy, and
**CW6**. The charges arise from a series of at least 30
burglaries of "mom and pop" pharmacies in and
around the counties which compose the Eastern

[*] **Four of these nine co-defendants
testified for the government at trial.
The testifying co-defendants will be
referred to in this Redacted
Opinion as "CW [Cooperating
Witness] 1," "CW2," etc.**

EXHIBIT
1

© 2012 Thomson US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

District of Pennsylvania, and the sale of firearms stolen in the January 29, 2005 burglary of the Ackley & Sons Sporting Goods Store in Westfield Pennsylvania.

CW1, CW2, CW3, Hudicek, Homan, Colon, James, Dunphy, and CW6 pled guilty to the charges against them. A jury trial was held before me from December 2, 2008 to January 9, 2009 on the charges against co-defendants Lenegan and Malloy.

Specifically, James Lenegan was charged with conspiracy to burglarize pharmacies in violation of 18 U.S.C. § 2118(d) (Count One); two counts of pharmacy burglary and aiding and abetting in violation of 18 U.S.C. §§ 2118(b) and 2 (Counts Twenty-Three and Twenty-Five); two counts of possession with intent to distribute controlled substances and aiding and abetting in violation of 21 U.S .C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Counts Twenty-Four and Twenty-Six); and conspiracy to commit arson in violation of 18 U .S.C. § 371 (Count Twenty-Seven). However, by Order dated August 5, 2008, I granted a government motion to dismiss Count Twenty-Seven, alleging conspiracy to commit arson, against defendant Lenegan.

*2 Defendant John Malloy was charged with conspiracy to burglarize pharmacies in violation of 18 U.S.C. § 2118(d) (Count One); seven counts of pharmacy burglary and aiding and abetting in violation of 18 U.S.C. §§ 2118(b) and 2 (Counts Twenty-Eight, Thirty, Thirty-Two, Thirty-Four, Thirty-Six, Thirty-Eight, and Thirty-Nine); six counts of possession with intent to distribute controlled substances and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), (b)(1) (C) and 18 U.S.C. § 2 (Counts Twenty-Nine, Thirty-One, Thirty-Three, Thirty-Five, Thirty-Seven, and Forty); and one count of conspiracy to deal in firearms without a license in violation of 18 U.S.C. § 371 (Count Forty-One).

On January 9, 2009, the jury convicted defendant Lenegan of the charges contained in Counts One, Twenty-Five and Twenty-Six, and acquitted him of the charges in Counts Twenty-Three and Twenty-Four. The jury convicted defendant Malloy of the charges contained in Counts One, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One, Thirty-Two, Thirty-Three, Thirty-Four, Thirty-Five, Thirty-Six,

Thirty-Seven and Forty-One, and acquitted him of the charges in Counts Thirty-Eight, Thirty-Nine and Forty.

Defendant Lenegan filed the within motion on January 16, 2009 seeking judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. That same day, defendant Malloy filed a request to join in the motion.

STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29 provides that the district court, upon the motion of a defendant or upon its own motion, shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial. United States v. Smith, 294 F.3d 473, 478 (3d Cir.2002), citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The Third Circuit has cautioned, however, that the district court "be ever vigilant in the context of ... [a Rule 29 motion] not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." United States v. Flores, 454 F.3d 149, 154 (3d Cir.2006).

The court must view the evidence as a whole, and in the light most favorable to the government. United States v. Hoffecker, 530 F.3d 137, 146 (3d Cir.2008). The government is further entitled to "the benefit of inferences that may be drawn from the evidence[,] and the evidence may be considered probative even if it is circumstantial." United States v. Patrick, 985 F.Supp. 543, 548 (E.D.Pa.1997), citing United States v. Pecora, 798 F.2d 614, 618 (3d Cir.1986); see also United States v. Griffith, 17 F.3d 865, 872 (3d Cir.1994).

*3 The proponent of a Rule 29 motion, therefore, bears a heavy burden to prove that the evidence presented by the government during trial was insufficient to support the verdict. See United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir.1990). In fact, the Third Circuit has held that acquittal should "be confined to cases where the prosecution failure is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

clear. *Smith,* 294 F.3d at 477; *United States v. Leon,* 739 F.2d 885, 891 (3d Cir.1984), quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1, 13 (1978).

"The evidence need not unequivocally point to the defendant's guilty as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore,* 910 F.2d 1084, 1129 (3d Cir.1990). Accordingly, "[a] verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Salmon,* 944 F.2d 1106, 1113 (3d Cir.1991); *United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.1987).

### CONTENTIONS OF THE PARTIES
#### Defendants' Contentions

Defendant Lenegan avers that, hearing the government's evidence presented in this case, no rational trier of fact could have found him guilty beyond a reasonable doubt. Specifically, defendant Lenegan contends that the government presented no physical evidence linking him to any of the crimes of which he was convicted.

Moreover, defendant Lenegan asserts that the only evidence supporting the conclusion that he committed any of the crimes charged comes from the testimony of cooperating codefendants **CW1, CW3, CW2, and CW6.** Defendant Lenegan avers that these co-defendants were "corrupt and polluted sources of evidence" because they were the beneficiaries of cooperation plea agreements, and therefore "testified in exchange for an anticipated reduction in sentence." He also notes that "[e]ach of the witnesses is also a convicted criminal." [FN2]

FN2. Defendant Lenegan's brief, page 4.

Accordingly, defendant Lenegan avers that no reasonable trier of fact could have found him guilty beyond a reasonable doubt, and seeks a judgment of acquittal on all counts of which he was convicted by the jury.

Defendant Malloy's motion for joinder in defendant Lenegan's motion does not contain a brief containing argument specific to his request, but

simply states that to the extent defendant Lenegan's motion "requests meritorious relief equally applicable to Defendant [Malloy], Defendant [Malloy] should be permitted, for the sake of economy and fairness, to join in this motion and obtain the same relief." [FN3]

FN3. Defendant Malloy's motion for joinder, paragraphs 1-2.

It is unclear whether defendant Malloy seeks to join only in defendant Lenegan's motion as it applies to him, that is, only regarding Count One, which is the only Count on which both defendants were convicted, or whether defendant Malloy seeks Rule 29 relief as to all convictions against him. Because defendant Malloy's intention is unclear, I will address the convictions on each individual count against each defendant.

#### Government Contentions

**\*4** The government contends that cooperating witness testimony is evidence which, if believed, is sufficient for a reasonable jury to conclude that the defendants are guilty. Moreover, the government avers that in considering this Rule 29 motion, the court may not consider the credibility of co-conspirator testimony, and notes that the defense staunchly cross-examined the four cooperating witnesses regarding their purported bias, motive and prior criminal histories, and argued all of these issues to the jury.

The government further contends that it presented sufficient evidence to prove that the defendants conspired with others to burglarize pharmacies. Specifically, the government asserts that witnesses testified that defendant Lenegan participated in pharmacy burglaries, and that both defendants Lenegan and Malloy identified particular pharmacies to burglarize and shared in the proceeds of the burglaries. The government contends that the jury may use circumstantial evidence to draw reasonable inferences of fact, despite a lack of physical evidence such as fingerprints or DNA linking a defendant to a crime.

Regarding the conspiracy to distribute firearms charge against defendant Malloy, the government avers that witness testimony established that Malloy participated in the burglary of 188 firearms from the Ackley & Sons gun shop, and also helped transport

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

the firearms to Philadelphia, participated in grinding off some of the firearms' serial numbers, helped transport many of the firearms to a buyer, and shared equally in the proceeds of the sale. The government contends that this evidence was corroborated by cell phone records and a Dremel tool grinding kit recovered in a vehicle driven by defendant Malloy.

Finally, the government contends that it presented sufficient evidence, by cooperator testimony, to establish that the defendants were guilty of the substantive burglary counts and corresponding counts charging possession with intent to distribute controlled substances. The government avers that the testimony of a co-conspirator subjected to cross-examination, even if uncorroborated, is sufficient to establish guilt as long as it is credited by the jury. Further, the government contends that in this case, the testimony of each cooperating witness was corroborated by at least one other cooperating witness, all of whom were subject to cross-examination by defendants, as well as by documentary and photographic evidence of the burglaries themselves.

For the following reasons, I agree with the government.

*DISCUSSION*

Reviewing defendants' motion in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury's verdict, as I am required to do under the standard of review set forth above, I conclude that the testimony elicited by the government at trial, which the jury apparently believed, together with the exhibits presented, was sufficient to establish each of the elements of the offenses of which defendants Lenegan and Malloy were convicted at trial.

*Count One*

*5 Because both defendants were convicted of the charge contained in Count One of the Indictment, I address that count as to both defendants.

Count One charges defendants Lenegan and Malloy, together with their nine co-defendants, with conspiracy to commit pharmacy burglary, in violation of 18 U.S.C. § 2118(d). Specifically, Count One alleges that from December 8, 2002 through June 1, 2005, defendants Lenegan and Malloy were part of a roving band of burglars together with Homan, CW1, CW2, and Hudicek, who, in various combinations or alone, burglarized homes, restaurants, businesses, and pharmacies.[FN4]

FN4. Indictment, Count One, paragraph 3.

Count One further alleges that defendants Colon, James, Dunphy, and CW6 assisted in some burglaries, and that all defendants conspired to burglarize pharmacies with the intent to steal controlled substances, including oxycodone.[FN5]

FN5. *Id.* at paragraphs 4-6.

Section 2118 of Title 18 provides, in pertinent part:

(a) Whoever, without authority, enters or attempts to enter, or remains in, the business premises or property of a person registered with the Drug Enforcement Administration under section 301 of the Controlled Substances Act (21 U.S.C. § 822) with the intent to steal any material or compound containing any quantity of a controlled substance shall ... be fined under this title or imprisoned not more than twenty years, or both, if ... the replacement cost of the controlled substance to the registrant was not less than $500 ....

(d) If two or more persons conspire to violate subsection (a) or (b) of this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than ten years or both.

18 U.S.C. § 2118(b), (d).

To prove a conspiracy existed under § 2118(d), the government must prove beyond a reasonable doubt that (1) defendant and at least one other person agreed to violate § 2118(b); (2) defendant knowingly and intentionally joined in the agreement; and (3) at least one conspirator committed an overt act in furtherance of the conspiracy. 18 U.S.C. § 2118(d); *see also United States v. Hatfield,* 2008 WL 151352, at *8 (S.D.Ill., Jan.15, 2008) (Reagan, J.).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

The government contends that witness testimony established that both defendants Lenegan and Malloy participated in burglaries, identified pharmacies to burglarize, and shared in the burglary proceeds. Moreover, the government avers that these defendants and their co-defendants shared a level of mutual trust and interest, burglarizing not only pharmacies but also commercial and residential properties. I conclude that the record of the trial of this matter supports the government's contentions.

For example, regarding defendant Lenegan's participation in the conspiracy, CW2 testified that in June 2004, Mr. Lenegan identified at least two pharmacies as possible burglary targets, and identified a third pharmacy together with CW2 and CW1.[FN6] CW1 also testified that Mr. Lenegan identified the Oxford Valley and Nu-Way Pharmacies, as well as non-pharmacy commercial businesses, as potential burglary targets.[FN7]

> FN6. Notes of Testimony of the jury trial conducted on December 29, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/29/08"), at pages 84-86. Specifically, CW2 testified that defendant Lenegan identified the Oxford Valley Pharmacy and the Nu-Way Pharmacy as potential targets on his own, and identified the Glendale Prescription Center together with CW2 and CW1.

> FN7. Notes of Testimony of the jury trial conducted on December 9, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/9/08"), at pages 15, 22, 95, 108.

*6 Moreover, CW2 testified that Mr. Lenegan participated in two successful pharmacy burglaries, at the Oxford Valley Pharmacy in June 2004 and at the Glen Center Pharmacy.[FN8] According to CW2's testimony, defendants Lenegan, CW2 and

CW1 shared in the proceeds of the Glen Center Pharmacy burglary, with CW1 and CW2 receiving the stolen drugs and Mr. Lenegan receiving approximately $3,000.00 cash.[FN9]

> FN8. N.T. 12/29/08, at pages 85-87.

> FN9. N.T. 12/29/08, at page 87.

Further, CW2 testified that Mr. Lenegan attempted to burglarize the Glendale Prescription Center with CW2 and CW1 on September 15, 2004, but that efforts to burglarize that pharmacy were abandoned because of police response.[FN10] CW2 also testified that defendant Lenegan participated in burglaries of non-pharmacy commercial establishments.[FN11]

> FN10. N.T. 12/29/08, at pages 84-85.

> FN11. For example, CW2 testified that on February 12, 2003, he and Mr. Lenegan burglarized Economy Supply, a restaurant supply store located in Philadelphia, Pennsylvania. According to CW2's testimony, Mr. Lenegan entered the store through a second-floor window, removed a safe, and threw it out the window. CW2 testified that he and Mr. Lenegan removed approximately $18,000.00 from the safe, which he and Mr. Lenegan shared, with Mr. Lenegan receiving more than half of the proceeds. Additionally, CW2 testified that he and Mr. Lenegan burglarized the New Valley Car Wash on September 11, 2004. N.T. 12/29/08, at pages 78-84.

As discussed below in the discussion of Counts Twenty-Five and Twenty-Six, CW1 and CW2 offered extensive trial testimony about defendant Lenegan's participation in the June 13, 2004 burglary of the Oxford Valley Pharmacy. I incorporate that discussion here.

The foregoing evidence, together with other evidence presented at trial, if credited by the jury,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

would support a finding that defendant Lenegan participated in a conspiracy to burglarize pharmacies in violation of 18 U.S.C. § 2118(d). Specifically, the testimony of CW2 and CW1 supports a conclusion that Mr. Lenegan, together with other codefendants, knowingly joined in an agreement to burglarize pharmacies, as evidenced by his participation in certain burglaries and by identifying certain target pharmacies, and that by these actions committed an overt act in furtherance of the conspiracy. Accordingly, I conclude that sufficient evidence was presented at trial to support defendant Lenegan's conviction on Count One of the Indictment, and I deny his motion for judgment of acquittal on that count.

Testimony and other evidence offered at trial also supports the conclusion that defendant Malloy participated in the conspiracy to commit pharmacy burglary. As set forth in my discussion of Counts Twenty-Eight through Thirty-Seven against defendant Malloy, below, several cooperating co-defendants offered trial testimony regarding defendant Malloy's participation in five pharmacy burglaries, and testified that defendant Malloy shared in the proceeds of the burglaries. I incorporate that discussion here. Additionally, the government presented evidence that defendant Malloy was involved in planning the burglaries, including the November 13, 2004 burglary of the Oakwood Drugs pharmacy, in addition to participating in carrying out the burglaries. [FN12]

> FN12. See, for example, N.T. 12/9/08, at pages 8-9.

The foregoing evidence, together with other evidence presented at trial, if credited by the jury, would support a finding that defendant Malloy participated in a conspiracy to burglarize pharmacies in violation of 18 U.S.C. § 2118(d). Specifically, the testimony of CW2, CW1, CW6, and CW3 supports a conclusion that defendant Malloy, together with other co-defendants, knowingly joined in an agreement to burglarize pharmacies, and that at least one member of the conspiracy committed an overt act in furtherance of the conspiracy. Accordingly, I conclude that sufficient evidence was presented at trial to support defendant Malloy's conviction on Count One of the Indictment, and I

deny his motion for judgment of acquittal on that count.

*Substantive Burglary and Possession With Intent to Distribute Charges*

*7 The jury also found each defendant guilty on substantive pharmacy burglary charges and aiding and abetting thereof, pursuant to 18 U.S.C. § 2118(b) and 18 U.S.C. § 2, together with corresponding charges of possession of controlled substances with intent to distribute and aiding and abetting thereof, pursuant to 21 U.S.C. § 841(a)(1), (b) (1)(C) and 18 U.S.C. § 2.[FN13]

> FN13. Specifically, defendant Lenegan was convicted on Count Twenty-Five, which charges the June 13, 2004 burglary of the Oxford Valley Pharmacy located at 1265 South Woodburn Road, Levittown, Pennsylvania, and Count Twenty-Six, which is the corresponding charge of possession with intent to distribute approximately 6,300 tablets containing controlled substances.
>
> Relevant to this discussion, defendant Malloy was convicted on Counts Twenty-Eight through Thirty-Seven. Count Twenty-Eight charges the November 13, 2004 burglary of the Oakwood Drugs pharmacy located at 1204 East Hunting Park Avenue, Philadelphia, Pennsylvania; Count Twenty-Nine is the corresponding charge of possession with intent to distribute approximately 7,360 tablets containing controlled substances.
>
> Count Thirty charges the November 21, 2004 burglary of Stanton Discount Pharmacy located at 2006 West Newport Pike, Wilmington, Delaware; Count Thirty-One is the corresponding charge of possession with intent to distribute approximately 10,165 tablets containing controlled substances.
>
> Count Thirty-Two charges the January 6, 2005 burglary of the Village Pharmacy, formerly located at 1000 Route 70, Lakewood, New Jersey; Count Thirty-Three is the corresponding charge of possession with intent to distribute

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

approximately 2,165 tablets containing controlled substances.

Count Thirty-Four charges the January 23, 2005 burglary of the Elwyn Pharmacy located at 194 South Middletown Road, Middletown Township, Pennsylvania; Count Thirty-Five is the corresponding charge of possession with intent to distribute approximately 1,425 tablets containing controlled substances.

Count Thirty-Six charges the February 19, 2005 burglary of Reses' Drugs located at 269 Whitehorse Pike, Pomona, New Jersey; Count Thirty-Seven is the corresponding charge of possession with intent to distribute approximately 4,700 tablets containing controlled substances.

In this case, to prove a violation of 18 U.S.C. § 2118(b), the text of which is set forth above in the discussion of Count One, the government must establish each of the following three elements beyond a reasonable doubt: (1) the defendant, knowingly and without authority, entered the business premises of a pharmacy owned by a person registered with the Drug Enforcement Agency under Section 302 of the Controlled Substances Act; (2) with the intent to steal tablets containing controlled substances; and (3) the controlled substances had an aggregate replacement cost of more than $500.00. 18 U.S.C. § 2118(b).

To prove a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), the government must prove the following four elements beyond a reasonable doubt: (1) the defendant possessed a mixture or substance containing a controlled substance; (2) the defendant possessed the controlled substance knowingly or intentionally; (3) the defendant intended to distribute the controlled substance; and (4) the controlled substance was any material or compound, including tablets, that contained a controlled substance. 21 U.S.C. § 841(a) (1), (b)(1)(C).

To prove that a defendant aided and abetted a crime under 18 U.S.C. § 2, the government must prove the following two elements beyond a reasonable doubt: (1) that the substantive crime has been committed, and (2) that the defendant knew of the crime and attempted to facilitate it. *United States*

*v. Frorup*, 963 F.2d 41, 43 (3d Cir.1992).

*Counts Twenty-Five and Twenty-Six Against Defendant Lenegan*

The jury found defendant Lenegan guilty on Count Twenty-Five, which charges the June 13, 2004 burglary of the Oxford Valley Pharmacy, and Count Twenty-Six, the corresponding count of possession with intent to distribute controlled substances. Specifically, Count Twenty-Six alleges that on June 13, 2004, defendant Lenegan possessed approximately 6,300 tablets containing Schedule II controlled substances, including OxyContin, oxycodone, methadone, Roxicodone, Percocet, and Endocet. Defendant Lenegan contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Lenegan was guilty on Counts Twenty-Five and Twenty-Six. For the following reasons, I agree.

As discussed above, at trial, CW2 and CW1 both testified that defendant Lenegan identified pharmacies as possible burglary targets. They also both testified that defendant Lenegan participated in burglarizing the Oxford Valley Pharmacy.[FN14]

> FN14. N.T. 12/9/08, at pages 22 and 95-100 (testimony of CW1); N.T. 12/29/08, at page 88 (testimony of CW2).

*8 Specifically, CW1 testified that he and defendant Lenegan entered the store together, but that defendant Lenegan left the store while CW1 disabled the store's alarm system. CW1 then left the store and he and defendant Lenegan and CW2 left the area for 30-45 minutes.[FN15] CW1 further testified that when police did not respond, he and defendant Lenegan went back inside the store, where he gathered pills in a trash bag, and defendant Lenegan took cash from a money box or the cash register.[FN16]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

FN15. N.T. 12/9/08, at pages 97 and 98.

FN16. N.T. 12/9/08, at pages 99 and 100.

CW1 testified that after the burglary, the three participants divided the proceeds, with each receiving the equivalent of several thousand dollars. He testified that defendant Lenegan received all of the cash taken from the Oxford Valley Pharmacy, as well as a bottle of OxyContin pills to give to another person who had asked him for them. Additionally, defendant Lenegan later received more cash from CW1 and CW2 as a portion of his share of the proceeds.[FN17]

FN17. N.T. 12/9/08, at pages 100-101.

The parties stipulated that if called to testify, Harry Morris, the manager of Oxford Valley Pharmacy, would testify that on June 13, 2004, during the hours the pharmacy was closed for business, the store was burglarized and United States currency in the amount of $6,683.00 and controlled substances with a purchase value of $12,328.17 were stolen. The stipulation further indicates that the Oxford Valley Pharmacy is a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN18] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes OxyContin, oxycodone, methadone, Roxicodone, Percocet, and Endocet tablets as charged in Count Twenty-Six.[FN19]

FN18. Government Exhibit 28 (Stipulation 1), at page 18.

FN19. Id. at Attachment P.

All of the foregoing evidence, if credited by the jury, supports the conclusion that defendant Lenegan entered the Oxford Valley Pharmacy on June 13, 2004 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Lenegan aided and abetted the commission of these offenses.

Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Lenegan was guilty of the charges in Counts Twenty-Five and Twenty-Six of the Indictment. Accordingly, I deny defendant Lenegan's motion for judgment of acquittal on those counts.

*Counts Twenty-Eight and Twenty-Nine Against Defendant Malloy*

The jury found defendant Malloy guilty on Count Twenty-Eight, which charges the November 13, 2004 burglary of the Oakwood Drugs pharmacy, and Count Twenty-Nine, the corresponding count of possession with intent to distribute controlled substances. Specifically, Count Twenty-Nine alleges that on or about November 13, 2004, defendant Malloy possessed with intent to distribute approximately 7,360 tablets containing controlled substances, including OxyContin, oxycodone, Endocet, Percocet, Oramorph, Kadian, MS Contin, Concerta, Methyline, amphetamine, and Adderall. Defendant Malloy contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

*9 The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was guilty on Counts Twenty-Eight and Twenty-Nine. For the following reasons, I agree.

At trial, CW1 testified that he and defendant Malloy participated in the burglary of Oakwood Drugs, together with CW3 and CW6.[FN20] CW1 testified that defendant Malloy identified this pharmacy as a potential burglary target based on "inside information" from his nephew, CW6, that there was a lot of OxyContin inside the store.[FN21]

FN20. Notes of Testimony of the jury trial conducted on December 11, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/11/08"), at page 156; N.T. 12/9/2008, at page 20.

FN21. N.T. 12/11/08, at page 157.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

CW1 further testified that he and defendant Malloy entered Oakwood Drugs through the basement, and that he knocked an alarm siren off the wall while defendant Malloy looked behind the counter for pills.[FN22] According to CW1, they stole a few hundred pills, and that he, defendant Malloy, and CW3 each may have taken a bottle apiece from the proceeds.[FN23]

FN22. N.T. 12/11/08, at pages 163 and 164.

FN23. N.T. 12/11/08, at page 166.

The testimony of CW6 corroborates CW1's testimony that CW1, CW6, Malloy, and CW3 were involved with the Oakwood Pharmacy burglary, and that defendants Malloy and CW1 were the ones who actually entered the pharmacy.[FN24] He further testified that after the burglary, the four participants met at CW1's house, where they distributed the stolen pharmaceuticals amongst themselves. CW6 testified that defendant Malloy gave him approximately 250 oxycodone pills and $700.00 in cash, and told him to give some of the pills to a pharmacy employee who had given him the "inside information" about the pharmacy.[FN25]

FN24. Notes of Testimony of the jury trial conducted on December 30, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/30/08"), at pages 138-142.

FN25. N.T. 12/30/08, at pages 147-148.

The parties stipulated that if called to testify, Harvey Kessler, the owner and manager of Oakwood Drugs, would testify that on November 13, 2004, during the hours the pharmacy was closed for business, the store was burglarized and controlled substances with a purchase value of $11,769.04 were stolen. The stipulation further indicates that Oakwood Drugs is a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN26] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes OxyContin, oxycodone, Endocet, Percocet, Oramorph, Kadian, MS Contin, Concerta, Methyline, amphetamine, and Adderall tablets as charged in Count Twenty-Nine.[FN27]

FN26. Government Exhibit 28 (Stipulation 1), at page 32.

FN27. Id. at Attachment Y.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy entered the Oakwood Drugs pharmacy on November 13, 2004 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Malloy aided and abetted the commission of these offenses.

*10 Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Malloy was guilty of the charges in Counts Twenty-Eight and Twenty-Nine of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on those counts.

*Counts Thirty and Thirty-One Against Defendant Malloy*
The jury found defendant Malloy guilty on Count Thirty, which charges the November 21, 2004 burglary of the Stanton Discount Pharmacy located at 2006 West Newport Pike, Wilmington, Delaware, and Count Thirty-One, the corresponding count of possession with intent to distribute controlled substances. Specifically, Count Thirty-One alleges that on or about November 21, 2004, defendant Malloy possessed with intent to distribute approximately 10,165 tablets containing controlled substances, including OxyContin, oxycodone, Percocet, Endocet, hydromorphone, morphine, methadone, and Adderall. Defendant Malloy contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

guilty on Counts Thirty and Thirty-One. For the following reasons, I agree.

At trial, CW1 testified that on November 21, 2004, he burglarized the Stanton Discount Pharmacy together with defendant Malloy CW3. [FN28] He further testified that all three participants entered the pharmacy through a rear door and gathered pills, including OxyContin, Percocet, Valium and Xanax, into a bag, as well as taking novelty items such as clocks and candles.[FN29]

FN28. N.T. 12/11/08, at pages 167 and 168.

FN29. N.T. 12/11/08, at pages 170-172.

CW1 testified that the participants divided the pills three ways, with each participant receiving pills worth several thousand dollars.[FN30] He further testified that in such situations, he and defendant Malloy typically sold their Percocet and OxyContin pills to CW3.[FN31] Additionally, CW3 testified that he as part of the conspiracy, he regularly purchased pills from defendant Malloy's share.[FN32]

FN30. N.T. 12/11/08, at pages 172, 177.

FN31. N.T. 12/11/08, at pages 177, 181.

FN32. CW3 testified that "I would always buy all [of defendant Malloy's] pills from him-all the Percs and Oxys, I would always buy from him, but he would always keep like a bottle or two bottles for himself." Notes of Testimony of the jury trial conducted on December 17, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/17/08"), at page 202.

According to CW1's testimony, the street value of OxyContin ranged from $5 per pill for a ten-milligram pill to $40 per pill for an eighty-milligram pill. CW1 stated that, for example, he and his co-defendants would sell an "Oxy 80" (eighty-milligram

pill) to a street distributor for $30, and the pill would sell on the street for $40. He further testified that typically he and his co-defendants would supply at least a hundred pills at a time.[FN33]

FN33. N.T. 12/11/08, at pages 178 and 179.

This testimony was corroborated by CW3, who testified that after proceeds of the Stanton burglary were divided evenly, he purchased defendant Malloy's share of the stolen pills. He further testified that he sold defendant Malloy's share, together with his own portion of the stolen pills, for a total of approximately $10,000 to $15,000.[FN34]

FN34. N.T. 12/17/08, at pages 187 and 188.

*11 The parties stipulated that if called to testify, Leonard Bronstein, the owner and manager of Stanton Discount Pharmacy, would testify that on November 21, 2004, during the hours the pharmacy was closed for business, the store was burglarized and controlled substances with a purchase value of $9,131.01 were stolen. The stipulation further indicates that the Stanton Discount Pharmacy is a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN35] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes OxyContin, oxycodone, Percocet, Endocet, hydromorphone, morphine, methadone, and Adderall tablets as charged in Count Thirty-One.[FN36]

FN35. Government Exhibit 28 (Stipulation 1), at pages 32 and 33.

FN36. Id. at Attachment Z.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy entered the Stanton Discount Pharmacy on November 21, 2004 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Malloy aided and abetted the commission of these offenses.

Therefore, I conclude that a rational trier of fact

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

could find beyond a reasonable doubt that defendant Malloy was guilty of the charges in Counts Thirty and Thirty-One of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on those counts.

### Counts Thirty-Two and Thirty-Three Against Defendant Malloy

The jury found defendant Malloy guilty on Count Thirty-Two, which charges the January 6, 2005 burglary of the Village Pharmacy formerly located at 1000 Route 70, Lakewood, New Jersey, and Count Thirty-Three, the corresponding count of possession with intent to distribute controlled substances. Specifically, Count Thirty-Three alleges that on or about January 6, 2005, defendant Malloy possessed with intent to distribute approximately 2,165 tablets containing controlled substances, including Percocet, oxycodone, methadone, hydromorphone, methylphenidate and Ritalin. Defendant Malloy contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was guilty on Counts Thirty-Two and Thirty-Three. For the following reasons, I agree.

At trial, CW1 testified that on January 6, 2005, he, defendant Malloy, and CW3 burglarized the Village Pharmacy. Specifically, he testified that after cutting the phone lines and prying open the back door, he and defendant Malloy entered the pharmacy and disabled the alarm while CW3 served as lookout.

CW1 further testified that all three left the area for twenty to thirty minutes and, when police did not respond, returned to the pharmacy where he and defendant Malloy re-entered. According to CW1's testimony, he and defendant Malloy stole pills worth a total of $15,000 to $20,000, which was divided evenly among CW1, Malloy and CW3. He further testified that he sold his share of the pills.[FN37]

FN37. N.T. 12/11/08, at pages 193-198.

*12 The parties stipulated that if called to testify, Paul Bernstein, the owner and manager of Village Pharmacy, would testify that on January 6, 2005, during the hours the pharmacy was closed for business, the store was burglarized and $1,302.48 in United States currency and controlled substances with a purchase value of $4,300 were stolen. The stipulation further indicates that the Village Pharmacy was a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN38] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes Percocet, oxycodone, methadone, hydromorphone, methylphenidate and Ritalin tablets as charged in Count Thirty-Three.[FN39]

FN38. Government Exhibit 28 (Stipulation 1), at pages 34 and 35.

FN39. Id. at Attachment Z.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy entered the Village Pharmacy on January 6, 2005 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Malloy aided and abetted the commission of these offenses.

Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Malloy was guilty of the charges in Counts Thirty-Two and Thirty-Three of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on those counts.

### Counts Thirty-Four and Thirty-Five Against Defendant Malloy

The jury found defendant Malloy guilty on Count Thirty-Four, which charges the January 23, 2005 burglary of the Elwyn Pharmacy located at 194 South Middletown Road, Middletown Township, Pennsylvania, and Count Thirty-Five, the corresponding count of possession with intent to distribute controlled substances. Specifically, Count Thirty-Five alleges that on or about January 23, 2005, defendant Malloy possessed with intent to distribute

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

approximately 1,425 tablets containing controlled substances, including Adderall, Percocet and Endocet. Defendant Malloy contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was guilty on Counts Thirty-Four and Thirty-Five. For the following reasons, I agree.

At trial, CW1 testified that on January 23, 2005, he, defendant Malloy, and CW3 engaged in a "smash and grab" burglary the Elwyn Pharmacy, with defendant Malloy serving as the getaway driver while CW1 and CW3 pried the door and entered the pharmacy. Specifically, he testified that he and CW3 gathered several thousand pills from inside the pharmacy worth a total of more than $10,000.

CW1 further testified that defendant Malloy waited at a nearby gas station in a Chevy Tahoe, which he pulled up to the pharmacy when defendants CW1 and CW3 exited the pharmacy with the pills. According to CW1's testimony, the three participants returned to their neighborhood in Philadelphia, where they divided the pills evenly.[FN40]

FN40. N.T. 12/11/08, at pages 205-211.

*13 This testimony was corroborated by CW3, who testified that on January 23, 2005, he and CW1 pried open the back door and entered the Elwyn Pharmacy while defendant Malloy served as lookout. CW3 further testified that he and CW1 stole Percocet and OxyContin pills, which they divided evenly among all three participants.

Additionally, CW3 testified that he purchased defendant Malloy's share of the pills, in conformance with their usual practice.[FN41] According to CW3's testimony, each of the three participants made between $5,000 and $10,000 from the sale of the pills.[FN42]

FN41. N.T. 12/17/08, at pages 199-202.

FN42. N.T. 12/17/08, at pages 202-203.

The parties stipulated that if called to testify, James Karalis, the owner and manager of Elwyn Pharmacy, would testify that on January 23, 2005, during the hours the pharmacy was closed for business, the store was burglarized and controlled substances with a purchase value of $3,656.77 were stolen. The stipulation further indicates that Elwyn Pharmacy was a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN43] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes Adderall, Percocet and Endocet tablets as charged in Count Thirty-Five.[FN44]

FN43. Government Exhibit 28 (Stipulation 1), at page 36.

FN44. Id. at Attachment CC.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy entered Elwyn Pharmacy on January 23, 2005 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Malloy aided and abetted the commission of these offenses.

Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Malloy was guilty of the charges in Counts Thirty-Four and Thirty-Five of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on those counts.

*Counts Thirty-Six and Thirty-Seven Against Defendant Malloy*

The jury found defendant Malloy guilty on Count Thirty-Six, which charges the February 19, 2005 burglary of Reses' Drugs pharmacy, located at 269 Whitehorse Pike, Pomona, New Jersey, and Count Thirty-Seven, the corresponding count of possession with intent to distribute controlled

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

substances. Specifically, Count Thirty-Seven alleges that on or about February 19, 2005, defendant Malloy possessed with intent to distribute approximately 4,700 tablets containing controlled substances, including OxyContin, Endocet, Percocet, oxycodone, Percodan and Endodan. Defendant Malloy contends that the evidence presented by the government at trial was insufficient to support the guilty verdicts on these counts.

The government contends that it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was guilty on Counts Thirty-Six and Thirty-Seven. For the following reasons, I agree.

*14 At trial, CW1 testified that on February 19, 2005, he was involved with the burglary of Reses' Drugs pharmacy, together with defendants Malloy and CW3. Specifically, CW1 testified that he and CW3 pried open the back door and entered the pharmacy while defendant Malloy served as lookout in CW1's green Buick LeSabre.

CW1 further testified that after cutting the phone lines and disabling the alarm, he and CW3 left the pharmacy and went back to the car, and all three left the area for thirty to forty minutes. When police did not respond, they returned to the pharmacy, where defendant Malloy continued to serve as lookout and defendants CW3 and CW1 re-entered the pharmacy and stole pills, including OxyContin and Percocet. According to CW1's testimony, he, defendant Malloy and CW3 each received a one-third share of the pills, with each participant receiving approximately $6,000 worth of pills.[FN45]

> FN45. Notes of Testimony of the jury trial conducted on December 15, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/15/08"), at pages 24-32.

CW3 corroborated this testimony, testifying

that he burglarized Reses' Drugs on February 19, 2005 with defendants Malloy and CW1, with defendant Malloy serving as lookout. CW3 further testified that the three divided the pills evenly, and that he purchased most of defendant Malloy's share of the pills. In total, CW3 testified that he made between $5,000 and $10,000 selling his own share of the pills and the pills he purchased from defendant Malloy.[FN46]

> FN46. N.T. 12/17/08, at pages 206-211.

The parties stipulated that if called to testify, Frank Kolondra, a pharmacist of Reses' Drugs pharmacy, would testify that on February 19, 2005, during the hours the pharmacy was closed for business, the store was burglarized and $405 in United States currency and controlled substances with a purchase value of $17,404.59 were stolen. The stipulation further indicates that Reses' Drugs was a business premises of a person registered with the Drug Enforcement Administration under 21 U.S.C. § 822.[FN47] Attached to the stipulation is an itemized list of merchandise lost or damaged in the burglary, which list includes OxyContin, Endocet, Percocet, oxycodone, Percodan and Endodan tablets as charged in Count Thirty-Seven.[FN48]

> FN47. Government Exhibit 28 (Stipulation 1), at pages 37 and 38.

> FN48. Id. at Attachment DD.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy entered Reses' Drugs on February 19, 2005 with the intent to steal controlled substances, and that he possessed controlled substances with the intent to distribute them. The evidence adduced at trial further supports the conclusion that defendant Malloy aided and abetted the commission of these offenses.

Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Malloy was guilty of the charges in Counts Thirty-Six and Thirty-Seven of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on those counts.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

*Count Forty-One Against Defendant Malloy*

**\*15** Finally, the jury found defendant Malloy guilty on Count Forty-One, which charges conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A). The count avers that from January 29, 2005 to February 2005 defendants CW1, CW3, Malloy, Colon, and James conspired to sell guns stolen in the January 29, 2005 burglary of the Ackley & Sons Sporting Goods Store, a federally licensed firearms dealer located at 311 West Main Street, Westfield, Pennsylvania.

Count Forty-One alleges that the five co-defendants burglarized the Ackley & Sons store, stealing approximately 188 firearms and ammunition, and then transported the firearms to Philadelphia to sell firearms to various individuals for profit, after keeping some of the firearms for themselves. Specifically, Count Forty-One avers that defendants Malloy and CW1 removed the serial numbers from the firearms using a Dremel rotary tool to hinder the tracing of the firearms by law enforcement, and then assisted with the sale of approximately 150 firearms in exchange for cash and controlled substances worth a total of approximately $15,000.

As noted above, the government contends that witness testimony established that Malloy participated in the Ackley burglary; helped transport the firearms to Philadelphia; participated in grinding off some of the firearms' serial numbers; helped transport many of the firearms to a buyer; and shared equally in the proceeds of the sale. The government contends that this evidence was corroborated by cell phone records and a Dremel tool grinding kit recovered in a vehicle driven by defendant Malloy.

I conclude that the evidence presented by the government at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant Malloy was guilty on Count Forty-One, and therefore I deny defendant Malloy's motion to the extent it seeks on judgment of acquittal on that Count.

Section 922(a) provides, in pertinent part:

(a) It shall be unlawful-

(1) for any person-

(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce[.]

18 U.S.C. § 922(a)(1)(A).

Section 371 provides, in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

To prove a conspiracy under § 371, the government must establish each of the following three elements beyond a reasonable doubt: (1) the existence of an agreement; (2) an overt act by one of the conspirators in furtherance of the objective; and (3) an intent on the part of the conspirators to agree. *United States v. Rankin,* 870 F.2d 109, 113 (3d Cir.1989).

**\*16** Here, the evidence presented at trial supports the conclusion that defendant Malloy agreed with other co-conspirators to deal in firearms without a license. For example, at trial, CW1 testified that on January 29, 2005 he and defendants Malloy, CW3, Colon, and James went to the Westfield, Pennsylvania area, where James's father lived, with the intention to steal four-wheelers from a dealership and take them back to Philadelphia, but changed their minds when they arrived in the area.

CW1 testified that after stopping at the Ackley and Sons store that day to buy ammunition for target practice, they noticed that the store's alarm system appeared to be older and easy to bypass. He testified

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

that all five co-defendants, including defendant Malloy, participated in a discussion about burglarizing the Ackley store.[FN49]

> FN49. Notes of Testimony of the jury trial conducted on December 4, 2008 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.12/4/08"), at pages 94 and 98.

CW1 also testified that sometime between 10:00 p.m. and midnight that night, the five co-defendants left James's father's house and drove to the Ackley store, where defendants CW1 and Malloy pried the front door, entered the store, and disabled the alarm. He further testified that defendants Malloy and James gathered firearms into two containers, which they loaded into CW1's truck, and returned to the residence of James's father.

CW1 further testified that the co-defendants, including defendant Malloy, returned to the Ackley store later that night to retrieve the rest of the guns in the store.[FN50] According to CW1's testimony, in total, 188 firearms were stolen from the Ackley store.[FN51]

> FN50. N.T. 12/4/08, at pages 99-106.

> FN51. N.T. 12/4/08, at page 108.

CW1 also testified that the five participants returned to Philadelphia, where they divided up some of the guns to keep for themselves and decided to try to sell the rest in one bulk sum rather than piecemeal. He further testified that they all made phone calls in search of a buyer, but only CW3 successfully found an interested buyer. According to CW1's testimony, all five participants, including defendant Malloy, participated in discussions about selling the firearms.[FN52]

> FN52. N.T. 12/4/08, at pages 117-120.

Further, CW1 testified that defendant Malloy

purchased a Dremel grinding tool kit and, together with CW1, used it to grind the serial numbers off the firearms, separating the weapons with ground-off serial numbers into a bin, to make it harder to trace the guns. He further testified that this process took about a day and that for part of the time, defendant Malloy worked on removing the serial numbers by himself, with CW1 finishing them in the last hour or two.[FN53]

> FN53. N.T. 12/4/08, at pages 120 and 123.

CW1 further stated that he, defendant Malloy, and CW3 went together to meet the purchaser, with CW1 driving approximately 130-150 firearms in his own truck and defendants Malloy and CW3 driving separately.[FN54] A few days later, the purchaser told CW3 that he did not want to keep all of the firearms, so defendants CW1, CW3 and Malloy returned to meet the purchaser and retrieved approximately 50 of the unwanted firearms. CW1 testified that the three were unable to find someone to sell the extra firearms and offered them to Colon and James, but they did not want them, so defendants CW1, CW3 and Malloy divided them among themselves.[FN55]

> FN54. N.T. 12/4/08, at pages 123-125.

> FN55. N.T. 12/4/08, at pages 127-129.

*17 According to CW1's testimony, the purchaser paid CW3 approximately $15,000 in cash and controlled substances, including OxyContin, for the firearms. CW1 testified that CW3 gave shares of the proceeds to defendants CW1, Malloy, James and Colon, and that CW1 had received a $3,000 share.[FN56]

> FN56. N.T. 12/4/08, at pages 130 and 131.

CW3 corroborated this testimony, testifying that defendant Malloy participated in discussions at pages regarding the sale of the stolen Ackley

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1587468 (E.D.Pa.)
(Cite as: 2009 WL 1587468 (E.D.Pa.))

firearms. Specifically, CW3 testified that the five co-defendants decided to sell the guns together rather than one by one, which they determined would have been more likely to draw attention. He further testified that each participant, including defendant Malloy, was tasked with trying to find a buyer, and that a buyer was located by CW3.[FN57]

> FN57. N.T. 12/17/08, at pages 40-43.

According to CW3, he and defendant Malloy were present when the buyer reviewed the firearms and agreed to take them. He further testified that once the buyer agreed to purchase the guns, he, defendant Malloy and CW1 participated in taking the firearms to the purchaser after removing the serial numbers.[FN58] CW3 stated that the purchaser paid a total of $15,000 in cash and controlled substances for the firearms, and that each of the five participants, including defendant Malloy, received a $3,000 share.[FN59]

> FN58. N.T. 12/17/08, at pages 44 and 45, 49-56.

> FN59. N.T. 12/17/08, at page 61.

At trial, Joseph Mangoni, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice, testified that the response to a request made by his office made the Federal Firearms Licensing at pages Center in Atlanta, Georgia revealed that defendant Malloy does not have a license to sell firearms legally.[FN60] Additionally, at trial the government introduced a certified copy of a document from the Federal Firearms Licensing Center dated July 25, 2008. The document states that there is no record of any application for, or issuance of, a firearms license to John Malloy for the period January 29, 2005 through July 21, 2008.[FN61]

> FN60. Notes of Testimony of the jury trial conducted on January 6, 2009 before me in Allentown, Pennsylvania, styled "Transcript of Jury Trial before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T.1/6/09"), at pages 160-162.

> FN61. Government Exhibit 27; see also N.T. 1/6/09, at pages 161 and 162.

All of the foregoing evidence, together with other evidence presented at trial, if credited by the jury, supports the conclusion that defendant Malloy conspired with other codefendants to sell firearms without a license. Therefore, I conclude that a rational trier of fact could find beyond a reasonable doubt that defendant Malloy was guilty of the charge in Count Forty-One of the Indictment. Accordingly, I deny defendant Malloy's motion for judgment of acquittal on that count.

*CONCLUSION*

For all the foregoing reasons, I deny defendants' Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c).

E.D.Pa.,2009.
U.S. v. Lenegan
Slip Copy, 2009 WL 1587468 (E.D.Pa.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.